## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**FILED**

UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

SEP 3 0 2003

*Robert M. March*
CLERK

**JAMES ROBERT McCANN,**
Guardian for **Joshua McCann,**
an incapacitated person,

    Plaintiff,

vs.                      No.   **CIV 01-0053 MCA/DJS**

**DONALD DORSEY** and **RAMIRO RODRIGUEZ,**
Warden and Assistant Warden of Torrance County
Detention Facility, **TORRANCE COUNTY**
**DETENTION FACILITY, CORRECTIONS**
**CORPORATION OF AMERICA, TORRANCE**
**COUNTY, TORRANCE COUNTY SHERIFF,**
**TORRANCE COUNTY COMMISSIONERS,**
**ROBERT J. PERRY,** Secretary of New Mexico
Department of Corrections, **NEW MEXICO**
**DEPARTMENT OF CORRECTIONS,** and
**JOHN DOES 1 THROUGH 4,** correctional
officers assigned to the ward housing Joshua
McCann on September 10, 1998,

    Defendants.

### MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court pursuant to the following motions:

Plaintiff's *Motion for Leave to File Plaintiff's Second Amended Complaint* [Doc. No. 41];

Defendants' *Third Motion To Dismiss (Civil Rights Claims)* [Doc. No. 50]; Defendants'

*Second Motion to Dismiss (Torrance County Detention Facility and the Torrance County*

*Sheriff's Department and Various Supplemental State Law Claims)* [Doc. No. 55];

*Defendants' Motion to Bifurcate Trial* [Doc. No. 87]; *Plaintiff's Motion for Summary*

*Judgment as to Negligence Count Against Corrections Corporation of America* [Doc. No.

91]; and *Defendants' Motion for Summary Judgment* [Doc. No. 96]. Having reviewed

the submissions of the parties, the relevant law, and otherwise being fully advised in the

premises, the Court determines that good cause exists for granting Plaintiff's motion for

leave to file a second amended complaint [Doc. No. 41], subject to the limitations expressed

below. The Court further determines that good cause exists for granting in part and denying

in part Defendants' second and third motions to dismiss [Doc. No. 50, 55], denying

Defendants' motion to bifurcate [Doc. No. 87], denying Plaintiff's motion for partial

summary judgment as to the negligence claim [Doc. No. 91], and granting in part and

denying in part Defendant's summary-judgment motion [Doc. No. 96].

## I.    BACKGROUND

On September 7, 2000, James McCann, as the guardian of Joshua McCann (an

incapacitated person), filed this civil action for personal injuries and for violation of civil

rights in the First Judicial District Court of the State of New Mexico. Plaintiff sued Dan

Moriarty (later replaced by Donald Dorsey), Ramiro Rodriguez, Warden and Assistant

Warden of Torrance County Detention Facility; Torrance County Detention Facility

(TCDF); Corrections Corporation of America (CCA); Torrance County; Torrance County

Sheriff; Torrance County Commissioners; Robert J. Perry, Secretary of the New Mexico

Department of Corrections; New Mexico Department of Corrections (NMDOC); and John Does 1 through 4, correctional officers assigned to the ward housing Joshua McCann on September 10, 1998.

Plaintiff has alleged violation of Joshua McCann's Eighth and Fourteenth Amendments rights. Plaintiff also has claimed relief under the state law theories of breach of contract, negligence, and fraudulent concealment. On January, 12, 2000, Defendants Ramiro Rodriguez, TCDF, CCA, and Torrance County removed the case to the United States District Court for the District of New Mexico. The remaining Defendants consented to the removal. (Notice of Removal ¶ 6). The parties proceeded to file dispositive motions in this Court. The pleadings, undisputed facts, and evidence of record regarding these motions can be summarized as follows.

A.    **The Attack on Joshua McCann**

Joshua McCann is a prisoner incarcerated by the State of New Mexico. (Stat. of Facts in support of Defs' Mot. for Summ. J. ¶1 & Resp. to Defs' Sep. Stat. of Facts in Supp. of Mot. for Summ. J. ¶ 1). On September 10, 1998, he was an inmate at TCDF. (Id.). He was eighteen years old at that time. (Ex.7). Approximately one o'clock in the afternoon of September 10, 1998, he was severely beaten by several inmates of that facility. (Dep. Windsor at 10-11, 16-18). Three inmates entered McCann's cell, jumped on him, tied him down, and punched and kicked him in the head, stomach, sides, and chest. (Id. at 16-17). The attack approximately lasted twenty-five to thirty minutes. (Id. at 18). During that time,

various other inmates entered the cell and kicked McCann. (Id. at 17-18). The entire operation was done in a relatively quiet fashion. (Id. at 25). After the attack, some of the attackers placed McCann in the lower bunk and pulled the covers over him. (Id. at 23 &24). They methodically cleaned and mopped the cell. (Id. at 21-22). The clean-up operation took two hours. (Id. 18 & 25). Scott Windsor, McCann's cell mate, changed McCann's position several times to help him with breathing. (Id. at 81). Other inmates would change McCann's position back. (Id.). Windsor, fearing an attack on himself, did not inform the correctional officers about McCann's condition. (Id. at 27).

At approximately eleven o'clock that evening, the shift commander received a telephone call from Merritt Youngdeer regarding an inmate's need for emergency medical treatment. (Ex. 7). The shift commander immediately notified the assistant shift commander. (Dep. Rutz at 22 & 23; Ex. 9). Howard Rutz and the correctional officer responded and conducted a cell-to-cell search. (Dep. Rutz at 23). Rutz asked Windsor if he and McCann were all right, and Windsor replied in the affirmative regarding himself, but did not reply regarding McCann. (Dep. Rutz at 24; Ex. 10). Rutz noticed from the doorway of McCann's cell that McCann was breathing erratically. (Dep. Rutz at 24). He also noticed the odor of blood in that cell. (Id. at 24-25). He pulled the blanket off of McCann and noticed how badly he was injured. (Id. at 25). He immediately called for medical help and the medical unit responded in three minutes. (Id. at 25 & 34). The emergency medical team arrived in another twenty minutes, and McCann was transported to University Hospital in

Albuquerque. (Ex. 10). Due to the injuries he sustained in the attack, McCann suffered irreversible brain damage. He is unable to walk, talk, or use his extremities, and he receives his feeding through a PEG tube. (Id. ¶ 16).

**B.     Previous Incidents at Torrance County Detention Center**

Donald Dorsey assumed the position as Warden of TCDF in December 1997. Between January and September of 1998, there were twenty-four inmate-upon-inmate assaults at the facility. (Ex. C1(1-72)). There were eleven assaults on inmates in their cells by other inmates who were not authorized to be there. (Ex. C1(1, 11, 15, 21, 25, 31, 32, 34, 49, 52, 56 & 57)). Of those eleven assaults, prison officers failed to detect attacks in ten incidents. (Id. at (1, 11, 15, 21, 25, 32, 34, 49, 56 & 57)). The incident reports indicate that the prison authorities took no employee action in connection with the incidents. (Id.(1, 11, 15, 21, 25, 31, 32, 34, 49, 52, 56 & 57)). In two prior incidents, the investigator indicated that the correction officers should have better observation of the units. (Ex. C1 ) (10 & 26). Warden Dorsey stated that, prior to September 10, 1998, he was not aware of any circumstances which posed a significant risk of harm to McCann or indicated that he would be attacked by his fellow inmates. (Ex. 11 at ¶ 6). However, McCann had been assaulted by another inmate prior to his beating on September 10, 1998, and requested placement in a voluntary administrative segregation. (Ex. Z; Ex. 1, Dep. McDonald at 69). At a subsequent time, he asked to be taken out of protective custody.

### C.    CCA's Policies and Procedures

It is the policy of TCDF that hourly safety and security checks be performed. (Dep. Dorsey at 72; Dep. Pennycuff at 72-73). According to CCA housing unit rules, "[inmates] are not permitted inside any cell other than the one [they] are assigned." (Ex. L). Generally, TCDF requires that there be one assigned floor officer and one control officer in the control center. (Dep. Dorsey at 72, Dep. Rutz at 7). The control officer is stationed in a room and is responsible for monitoring the four units. (Dep. Rutz at 7). He monitors the audio and video surveillance, but cannot see into the cells. (Ex. J; Aff. Montogomery ¶ 14). The control office has multiple screens and receives four-second "snippets" from various locations throughout the institution. (Id.).

### D.    Procedures Performed on September 10, 1998

On September 10, 1998, Officer Abe Henson was assigned to Unit 6. (Undisputed Facts ¶ 40 & 41). Officer Henson performed only two safety and security checks during his eight-hour shift from 2.00 p.m. until 10.00 p.m. (Ex. V). During the swing shift, between 2.00 p.m. to 10.00 p.m., he covered two units comprising of 320 inmates. (Dep. Henson at 24-25; Ex. X). During that time, Michael Alirez, a senior correctional officer, also was assigned to Units 5 and 6 along with Officer Henson. (Ex. X). Alirez covered Units 5 and 6 during that shift, helped Units 7 and 8, attended a meeting for two hours, went to culinary, and departed to the shift commander's office. (Ex. X). Officer Henson recollects seeing an

inmate in a fetal position during the swing shift between 6:10 p.m. and 8.30 p.m., and thought it was Joshua McCann. (Dep. Henson at 49-51).

### E.    Classification of Inmates at TCDF

In 1998, a consent decree was entered in Duran v. King, No. Civ. 77-0721. Pursuant to that decree, all classifications involving changes in custody or security designation were to be made by the NMDOC committee. (Aff. Perry ¶ 13). Under the contract, TCDF is required to utilize the classification system employed by NMDOC. (Aff. Sullivan at ¶ 4). Under the NMDOC classification, McCann, as well as his four attackers, were classified as "medium" custody inmates. (Aff. Sullivan ¶ 4). Plaintiff's expert notes that one of the attackers should have been classified as "close" custody. (Ex. J, Aff. Montgomery ¶ 6). The Joint Powers Agreement provides that "single cells are required for inmates assigned to maximum or close custody." (Ex. J, Aff. Montgomery ¶ 11). Defendants' expert notes that, generally, the medium and close custody classified inmates share the same housing units and share multiple cells. (Ex. 14, Aff. Sullivan ¶ 6). Additionally, inmates so classified are usually permitted to participate in group activities in housing unit pods' common areas, including recreation, TV viewing, and table games. (Id. at ¶ 7). They can visit each others' rooms during meals. (Id.).

### F.    Involvement of NMDOC

Defendant Robert Perry was responsible for the executive management of the NMDOC. David Trainer was the contract monitor for NMDOC on site at the TCDF. (Dep.

Trainer at 10-11). When an incident report was generated at TCDF dealing with a state inmate, Trainer was notified. (Dep. 24-25). He was responsible for reporting the incident to one of Defendant Perry's designees. (Dep. Trainer. at 25-26).

### G.    Agreements Between NMDOC and CCA

Lea County entered into an agreement with NMDOC to provide care and custody to the inmates of NMDOC. The Joint Powers Agreement and the Extension of Joint Powers Agreement between these parties expressly provided that "the provisions of this agreement are for the sole benefit of the parties and shall not be construed as conferring rights on any other person or entity." (Ex. 25 ¶ 41). On July 1, 1998, Torrance County entered into an agreement with Lea County to house NMDOC's inmates at TCDF. (Ex. T). The agreement between Torrance and Lea Counties (effective from October 29, 1997, and the amended agreement effective from July 1, 1998), references the contract between NMDOC and Lea County. (Id.). Effective November 9, 1990, Torrance County entered into a contract with CCA to house NMDOC inmates. (Ex. 26). The management services contract entered into by Torrance County and CCA contained the language that "the provisions of this agreement are for the sole benefit of the parties hereto and shall not be construed as conferring any rights on any other person." (Id.)

-8-

## II.   ANALYSIS

### A.   Plaintiff's Motion for Leave to File a Second Amended Complaint

Before turning to the parties' dispositive motions and Defendants' motion to bifurcate, the Court first must address Plaintiff's motion for leave to file a second amended complaint.  [Doc. No. 41.]  Plaintiff's motion to amend was the subject of a status conference on November 25, 2002.  The Court now clarifies its oral ruling at the status conference.

A complaint may be amended "once as a matter of course at any time before a responsive pleading is served."  Fed. R. Civ. P. 15(a).  Thereafter, such an amendment requires leave of the Court or written consent of the adverse party.  Such "leave shall be freely given when justice so requires."  Id.  It is within the Court's discretion, however, to deny leave to amend a pleading under Fed. R. Civ. P. 15(a) based upon a justifying reason such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment."  Foman v. Davis, 371 U.S. 178, 182 (1962); accord Hom v. Squire, 81 F.3d 969, 973 (10th Cir. 1996). A motion to amend a complaint should be denied as futile if, notwithstanding the amendment, the complaint "would be subject to dismissal."  Jefferson County Sch. Dist. No. R-1 v. Moody's Investor's Servs., Inc., 175 F.3d 848, 859 (10th Cir. 1999).

In this case, the Court concludes that Plaintiff's proposed amended complaint complies with the procedural requirements of Fed. R. Civ. P. 15(a) and is, therefore, granted in part subject to the following limitations. First, the amended pleading shall not include those claims which Plaintiff already has conceded to be subject to dismissal. Second, under the current procedural posture of this case, the Court must still determine the extent to which the claims asserted in the proposed second amended complaint would be subject to dismissal on the grounds asserted in Defendants' motions to dismiss and Defendants' motions for summary judgment. In reviewing these motions by Defendants, the Court treats the proposed second amended complaint as if it were the pleading under review. To the extent that certain claims in the proposed second amended complaint are subject to dismissal on the grounds asserted in these motions, the motion to amend is denied in part as futile.

### B.    <u>Dispositive Motions</u>

Defendant has filed motions to dismiss under Fed. R. Civ. P. 12(b)(6) as well as a motion for summary judgment under Fed. R. Civ. P. 56. In addition, Plaintiff has moved for summary judgment as to his negligence claim against Defendant CCA. As Plaintiff readily admits, some of his other claims are subject to dismissal under Fed. R. Civ. P. 12(b)(6) notwithstanding the amendment of his pleading. With regard to the remaining claims, the analysis of Defendants' motions to dismiss under Fed. R. Civ. P. 12(b)(6) is subsumed by the analysis of the parties' motions for summary judgment under Fed. R. Civ. P. 56, as further explained below.

-10-

1.     **Standards of Review**

Dismissal of a complaint under Fed. R. Civ. P. 12(b)(6) is appropriate only if "'it

appears beyond doubt that the plaintiff can prove no set of facts in support of his claim

which would entitle him to relief.'" GFF Corp. v. Associated Wholesale Grocers, Inc., 130

F.3d 1381, 1384 (10th Cir.1997) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the

parties might present at trial, but to assess whether the plaintiff's complaint alone is legally

sufficient to state a claim for which relief may be granted." Miller v. Glanz, 948 F.2d 1562,

1565 (10th Cir.1991). Accordingly, all well-pleaded factual allegations in the complaint are

accepted as true and viewed in the light most favorable to the nonmoving party. GFF Corp.,

130 F.3d at 1384.

In addition to the complaint, "the . . . [C]ourt may consider documents referred to in

the complaint if the documents are central to the plaintiff's claim and the parties do not

dispute the documents' authenticity." Jacobsen v. Deseret Book Co., 287 F.3d 936, 941

(10th Cir. 2002). Thus, "if a plaintiff does not incorporate by reference or attach a document

to its complaint, but the document is referred to in the complaint and is central to the

plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be

considered on a motion to dismiss." GFF Corp., 130 F.3d at 1384. The Court "may also

take judicial notice of matters of public record without converting a 12(b)(6) motion into a

motion for summary judgment." Henson v. CSC Credit Servs., 29 F.3d 280, 284 (7th Cir. 1994).

To the extent that Defendants' motions refer to other material outside of the pleadings, they are reviewed as motions for summary judgment pursuant to Fed. R. Civ. P. 56. See Fed. R. Civ. P. 12(b). Summary judgment under Fed. R. Civ. P. 56(c) "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading. . . ." Fed. R. Civ. P. 56(e). Rather, "the adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial." Id. Judgment is appropriate "as a matter of law" if the nonmoving party has failed to make an adequate showing on an essential element of its case, as to which it has the burden of proof at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Lopez v. LeMaster, 172 F.3d 756, 759 (10th Cir. 1999).

In order to warrant consideration by the Court, the factual materials accompanying a motion for summary judgment must be admissible or usable at trial (although they do not necessarily need to be presented in a form admissible at trial). See Celotex, 477 U.S. at 324. It is not the court's role, however, to weigh the evidence, assess the credibility of witnesses,

or make factual findings in ruling on a motion for summary judgment. Rather, the Court assumes the evidence of the non-moving party to be true, resolves all doubts against the moving party, construes all evidence in the light most favorable to the non-moving party, and draws all reasonable inferences in the non-moving party's favor. See Hunt v. Cromartie, 526 U.S. 541, 551-52 (1999).

### 2.   Defendants' Third Motion to Dismiss (Civil Rights Claims)

As a preliminary matter, the Court notes that all civil-rights claims against Robert Perry in his official capacity, and all civil-rights claims against NMDOC, have been voluntarily dismissed by Plaintiff. Plaintiff also agrees that the Torrance County Commissioners, Torrance County Sheriff, and TCDF are not proper parties to this lawsuit. (See Plaintiff's Response to Third Motion to Dismiss Civil Rights Claims at 14; Plaintiff's Response to Second Motion to Dismiss at 4). It follows that Defendants' Third Motion to Dismiss must be granted in part with respect to these claims and these Defendants.

As a matter of law, Plaintiff's claim against CCA may not be based solely on the theory of *respondeat superior* liability because CCA can only be liable for its own unconstitutional policy or custom. Plaintiff's argument that CCA is bound under the theory of *respondeat superior* because it is not a municipal entity is without merit. A private corporation is not liable under § 1983 for torts committed when such liability is predicated solely upon a theory of *respondeat superior*. See Rojas v. Alexander's Dep't Store, Inc., 924 F.2d 406, 408-09 (2nd Cir. 1990). A corporation acting under color of state law will

-13-

only be held liable for its own unconstitutional policies and cannot be held liable under §

1983 on a *respondeat superior* theory. See Sanders v. Sears, Roebuck & Co., 984 F.2d 972

(8th Cir. 1993). Therefore, Defendant's *Third Motion to Dismiss* is also granted in part with

respect to Plaintiff's *respondeat superior* theory against Defendant CCA.

As to the remaining civil-rights claims directed against Defendants Dorsey,

Rodriguez, Perry (in his individual capacity), Corrections Corporation of America (CCA)

(under a theory of municipal liability), and Torrance County, the Court's analysis of

Defendants' *Third Motion to Dismiss* is subsumed by its analysis of Defendant's *Motion for*

*Summary Judgment*. Therefore, Defendants' *Third Motion to Dismiss* is denied in part as

moot with respect to these remaining claims, which are more appropriately analyzed under

the summary-judgment standard.

### 3.    Defendants' Second Motion to Dismiss (State Law Claims)

As a preliminary matter, the Court notes that Plaintiff has voluntarily dismissed all

named parties-Defendant from his breach of contract claim, except Defendants CCA,

Torrance County, and NMDOC. (Plaintiff's Response to Second Motion to Dismiss at 4).

It is also noted that Plaintiff voluntarily dismissed TCDF and the Torrance County Sheriff

from all claims it asserts against Defendants. (See id.)  Plaintiff concedes that TCDF is not

a proper party before this Court, nor is the Torrance County Sheriff's Department. Plaintiff

also agrees to dismiss Warden Dorsey and Assistant Warden Rodriguez with regard to the

breach of contract claim, as they are not parties to the contract.

-14-

The Court further notes that Plaintiff has voluntarily dismissed his claim for damages based upon a theory of fraudulent concealment and his claim for punitive damages against certain governmental Defendants. (see Plaintiff's Reply Brief in Support of Motion to Amend Complaint at 23). Plaintiff agrees that punitive damages are not recoverable against governmental entities in either breach of contract or negligence claims. Plaintiff further concedes that he did not allege the fraudulent concealment claim to recover damages, but rather to toll the statute of limitations. Plaintiff concedes that the § 1983 claim cannot be founded on mere negligence. These concessions are accepted. It follows that Defendants' *Second Motion to Dismiss* must be granted in part with respect the above claims and Defendants.

As to Plaintiff's remaining state-law claims, the Court's analysis of Defendants' *Second Motion to Dismiss* is subsumed by its analysis of Defendants' *Motion for Summary Judgment.* Therefore, Defendants' *Second Motion to Dismiss* is denied in part as moot with respect to these remaining claims, which are more appropriately analyzed under the summary-judgment standard.

### 4.    Defendants' Motion for Summary Judgment

As noted above, Defendant has moved for summary judgment on many of Plaintiff's remaining claims, in addition to moving to dismiss these claims under Fed. R. Civ. P. 12(b)(6). The Court reviews Defendants' arguments regarding these remaining claims under the summary-judgment standard provided in Fed. R. Civ. P. 56. The Court first addresses

Plaintiff's remaining federal civil-rights claims, and then turns to Plaintiff's remaining state-law claims.

Plaintiff pleads an Eighth Amendment and a Fourteenth Amendment civil-rights claim against the remaining Defendants. The Eighth Amendment claim can be divided into two parts. Plaintiff asserts that the remaining Defendants (1) failed to protect him from inmate violence, and (2) failed to provide medical assistance to him. Defendants contend that summary judgement should be granted on each of these claims. Plaintiff contends that he demonstrated a genuine issue of material fact as to each of these claims and, therefore, summary judgment should be denied.

### a. Eighth Amendment Claim Regarding Medical Assistance

The Eighth Amendment guarantees that the government shall not inflict cruel and unusual punishments. See Garrett v. C.A. Stratman, M.D., 254 F.3d 946, 948 (10th Cir. 2001). To establish an Eighth Amendment violation for failure to prevent harm, an inmate must establish that (1) the conditions of incarceration pose a substantial risk of serious harm, and (2) the prison official's state of mind must be one of deliberate indifference to the inmate's health or safety. See Farmer v. Brennan, 511 U.S. 825, 834 (1994). Deliberate indifference has both an objective and a subjective component. See id. Mere negligence does not suffice to establish liability under the Eighth Amendment. See id. (holding that liability for Eighth Amendment violation requires deliberate indifference to serious medical needs of prisoners, not simply negligence in diagnosis or treatment). Deliberate indifference

requires a higher degree of fault than negligence or even gross negligence. See Berry v. City of Muskogee, Okla., 900 F.2d 1489, 1495 (10th Cir. 1990).  To demonstrate an Eighth Amendment violation, an inmate must satisfy both objective and subjective elements.  See Sealock v. Colo., 218 F.3d 1205, 1209 (10th Cir. 2000). The objective component is met if the deprivation is sufficiently serious.  See id. The subjective component—deliberate indifference—is met if the prison official was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837.  A prison official's knowledge of substantial risk is a question of fact which can be proven by circumstantial evidence.  See id. By way of an example, in the context of inmate attacks by other inmates, the Farmer Court explained the type of circumstantial evidence needed for a finding of actual knowledge on the part of a prison official, as follows:

> [I]f an Eighth Amendment plaintiff presents evidence showing that a substantial risk of inmate attacks was "longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus 'must have known' about it, then such evidence could be sufficient to permit a trier of fact to find that the defendant-official had actual knowledge of the risk."

Id. at 842-43.  A plaintiff must establish that defendant(s) knew he faced a substantial risk "by failing to take reasonable measures to abate it." Id. at 847.  Although in general it is not enough to establish that the officials should have known of the risk of harm, in some cases,

"a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." Farmer, 511 U.S. at 842.

A medical need is considered "'sufficiently serious'" if the condition has been diagnosed by a physician as mandating treatment, or is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. Oxendine v. R.G. Kaplan, 241 F.3d 1272, 1276 (10th Cir. 2001). An inadvertent delay or negligent diagnosis will not satisfy the deliberate indifference needed to allege a medical wrong under the Eighth Amendment. See Riddle v. Mondragon, 83 F.3d 1197, 1203 (10th Cir. 1996).

Defendants argue that summary judgment should be granted on Plaintiff's Eighth Amendment claim with respect to their failure to provide medical assistance. Defendants contend that they did not violate the Eighth Amendment because they were not aware of any impending danger to Joshua McCann. They contend that because Joshua's cell mate and the attackers changed Joshua McCann's position, they were not subjectively aware of Joshua McCann's injury. They also argue that there was no delay in providing medical treatment to Joshua McCann once they realized his need for medical care.

It is undisputed that Defendants did not discover Joshua McCann's injury until 11:15 p.m., some eight or nine hours after the attack. It is also undisputed that he was deliberately placed on his bed in a sleeping position and was covered with a blanket. Joshua McCann's cell mate and the attackers shifted the position of his body. He was given medical attention within three minutes after prison officials discovered him. He was airlifted to the University

-18-

of New Mexico hospital within twenty minutes after the discovery. These facts do not establish that any of the Defendants intentionally or knowingly disregarded Joshua McCann's serious medical needs. See Farmer, 511 U.S. at 837. These facts do not establish that any of Defendants intentionally refused medical treatment to Joshua McCann. See id. at 834. There is no evidence of knowledge on the part of any Defendants regarding Joshua's injury until 11:15 p.m. Without such evidence, Plaintiff cannot demonstrate that Defendants realized a substantial risk of serious harm to McCann by their inaction. The Court concludes that Defendants are entitled to summary judgment on the issue of failure to provide medical treatment.

**b.    <u>Eighth Amendment Claim of Failure to Protect</u>**

Plaintiff argues that evidence of Defendants' knowledge of previous attacks upon other inmates supports his Eighth Amendment claim on a different theory, namely that Defendants failed to protect him from inmate violence. Plaintiff does not dispute the fact that Defendants did not have knowledge of impending attacks on Joshua McCann in particular. It is also undisputed, however, that Defendants were generally aware of various attacks on inmates by other inmates. Plaintiff argues that because the danger of harm to inmates was so obvious and prevalent, the subjective requirement for pleading a claim under the Eighth Amendment has been satisfied. The Court's separately analyzes these contentions with respect to the following Defendants.

### i.    Defendant Perry

The Court first addresses Plaintiff's remaining Eighth Amendment claim against Defendant Perry. Plaintiff's only allegations that support liability against Defendant Perry are that he was responsible for ensuring that all facilities, private and public, meet Department of Corrections standards for housing inmates, and that they follow Department's policies and procedures. Plaintiff alleges that David Trainer, a special agent of NMDOC, sent reports to Perry's designee. Even if accepted as true, these facts are insufficient to support Plaintiff's claim that Perry was aware that sufficiently serious conditions existed at TCDF, or that he was deliberately indifferent to such conditions. At most, these facts establish that Perry should have known of conditions at the TCDF. Even assuming that Perry was aware of the history of inmate attacks at TCDF, Plaintiff has failed to present any evidence to support the subjective element of the Eighth Amendment that Perry was reckless, or deliberately ignored the risk to Joshua McCann. At most, Plaintiff establishes that Perry should have known of the risk of harm, and should have taken measures to avoid the harm. Such facts are not enough to establish an Eighth Amendment violation. See Barney v. Pulsipher, 143 F.3d 1299, 1310 (10th Cir. 1998). An inadvertent delay or negligent behavior will not satisfy the deliberate indifference needed to sustain the claim of Eighth Amendment. See Riddle, 83 F.3d at 1203 (holding that inadvertent delay or negligent diagnosis is not enough to constitute denial of medical treatment under the Eighth

Amendment).   Summary judgment is therefore granted to Defendant Perry on the Eighth

Amendment failure to protect claim.

### ii.    Defendant Torrance County

With regard to Defendant Torrance County, Plaintiff's brief is silent on the county's

knowledge of pervasive attacks at CCA, or its deliberate indifference to such attacks.  There

is no evidence that Torrance County formulated any policy for TCDF or the inmates.  The

only connection it has to the present litigation is through its contract with CCA.  It neither

conducted investigations into the incidents, nor employed anyone at the TCDF site.  Plaintiff

has failed to provide any evidence in support of either the objective or subjective elements

of his Eighth Amendment claim against Torrance County.  As such, the Court concludes that

Plaintiff failed to discharge his burden of proving any constitutional violation on the part of

Torrance County.  Summary judgment is granted to Torrance County on Plaintiff's Eighth

Amendment failure-to-protect claim.

### iii.    Defendants Dorsey and Rodriguez

Plaintiff has established the knowledge of CCA, Warden Dorsey, and Assistant

Warden Rodriguez as to ongoing violence at the TCDF.  There were eleven inmate-upon-

inmate assaults, ten of which were not discovered by prison officials until the incidents

transpired.  These Defendants did not present any evidence that they established or adopted

any preventive measures to curtail these incidents.  On the other hand, documentation has

been submitted which suggests that these Defendants failed to take any employee action with

-21-

respect to these incidents, and failed to implement the policy or guideline which prohibited inmates from entering one another's cell.

On the day of Joshua McCann's attack, Officer Henson failed to perform at least six safety checks during his shift. The evidence suggests that Defendants CCA, Dorsey, and Rodriguez should have known that the supervision by the controlling officer, charged with watching four monitors with the images changing every four seconds, might not be effective. The evidence further suggests that safety checks were merely a formality, and that the correction officers merely looked for inmates' identification badges and matched them with the names in the roster. (Id. at 82-83). The officers did not check on the inmates' physical presence. (Id. at 82-83). Had they checked, they would have found many inmates in cells that did not belong to them. (Id. at 84). Joshua McCann was assaulted by another inmate and went into voluntary protective custody on an earlier occasion. This fact may have alerted the above-named Defendants of the higher risk. Based on the evidence of substantial risk of inmate attacks, it can be inferred that these Defendants were alerted to the information concerning these prevalent risks. Further, Plaintiff established that these Defendants failed to adopt any corrective measures for better observation of cells and failed to train the prison staff better to notice and prevent attacks on inmates. Such evidence could be sufficient to permit a trier-of-fact to find that Defendants had actual knowledge of the inherent risk. As such, a genuine issue of material fact exists and, therefore, the Court

denies Defendants' motion for summary judgment on Plaintiff's Eighth Amendment failure to protect claims against Defendants Dorsey and Rodriguez.

Defendants further argue that Defendants Dorsey and Rodriguez's positions as warden and assistant warden are not enough to sustain a § 1983 claim against them because there is no evidence that they personally participated or directed or condoned any conduct that placed Joshua McCann at a significant risk. This argument is without merit. A supervisor may be held personally liable when there is essentially a complete failure to train that is so reckless or grossly negligent that future misconduct is almost inevitable. In the present case, evidence establishes the warden and assistant warden's knowledge of the many incidents of violence at the facility. There is evidence that they failed adequately to train the prison staff in an effort to address the situation. Evidence of such failure to undertake positive measures to prevent future attacks may be used to demonstrate reckless indifference to the safety of the inmates. Their inaction in the training, supervision, and control of the facility and the prison staff can be reasonably and affirmatively linked to Joshua McCann's injury. For these additional reasons, Defendants' motion for summary judgment on the Eighth Amendment failure-to-protect claim is denied as to Defendants Dorsey and Rodriguez.

### iv.    Defendant CCA (Municipal Liability)

Defendants argue that even if the Court finds an underlying constitutional violation, Defendant CCA is entitled to summary judgment because Plaintiff failed to prove an

unconstitutional policy or custom under the theory articulated in Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978). Defendant further argues that Plaintiff failed to establish the element that CCA's policy, custom, or its failure to train, caused Joshua McCann's injury.

A municipality may be held liable under 42 U.S.C. § 1983 only for its own unconstitutional or illegal policies. See Monell, 436 U.S. at 694; Barney, 143 F.3d at 1307. A plaintiff must also show the existence of a municipal custom or policy, and a direct causal link between the custom or policy and the alleged violation. See City of Canton v. Harris, 489 U.S. 378, 385 (1989).

Generally, a municipality can be liable in three possible ways. First, a municipality may be liable for acts officially sanctioned or ordered by its final policy-making authority. See Pembaur v. City of Cincinnati, 475 U.S. 469, 480-81 (1986) (plurality opinion). Second, a municipality may be liable for constitutional deprivations "visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision[-]making channels." Monell, 436 U.S. at 691; Pembaur, 475 U.S. at 481-82 n.10 (holding that the custom may be established by proof of knowledge and acquiescence); Fletcher v. O'Donnell, 867 F.2d 791, 793-94 (3rd Cir. 1989). Finally, municipal liability can be established through the theory of inadequate training. The inadequacy of training may serve as the basis for § 1983 liability if the failure to train

amounts to deliberate indifference to the rights of persons with whom the police come into contact.  See City of Canton, 489 U.S. at 388.

In the present case, Plaintiff has not presented evidence of an official policy on the part of CCA.  However, Plaintiff provided evidence of frequent incidents of violence directed against other inmates and the repeated failure of the prison authorities to detect and deter such incidents.  Plaintiff also presented evidence of the prison staff's failure to conduct hourly safety and security checks, and their failure to restrict the inmates from entering other inmates cells; and their failure to properly monitor the inmates.  This evidence supports a reasonable inference of inadequate training.  Because inmate violence is so pervasive at TCDF, and no employee action was taken to correct the situation, it can be reasonably inferred that CCA was reckless in training its officers.  The lack of corrective actions can be traced to Joshua McCann's assault and injury.  This evidence presents a genuine issue of fact which precludes summary judgment as to this claim.  Defendant's *Motion for Summary Judgment* is, therefore, denied as Plaintiff's Eighth Amendment municipal liability claim against Defendant CCA for failure to protect.

### c.    **Fourteenth Amendment Claims**

Where a plaintiff has brought his claim under the Eighth Amendment, which provides explicit constitutional protection to prisoners against cruel and unusual punishment, that plaintiff cannot bring a separate and independent claim under § 1983 for the same behavior based on substantive due process.  See Graham v. Connor, 490 U.S. 386, 392 (1989)

-25-

(holding that it is improper in a §1983 action to rely on a substantive due process claim when there is a specific Fourth Amendment constitutional standard governing Plaintiff's claimed right). As a general matter, the Court has always been reluctant to expand the concept of substantive due process. See Albright v. Oliver, 510 U.S. 266, 271 (1994). "Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of 'substantive due process' must be the guide for analyzing the claims.'" Id. at 273 (quoting Graham, 490 U.S. at 395). Thus, Plaintiff is not entitled to bring his claim under the Fourteenth Amendment.

Even assuming Plaintiff can bring such a claim, he failed to establish the requisite elements for a successful Fourteenth Amendment violation. The State is not constitutionally obligated to protect its citizens from private violence. See Sutton v. Utah State Sch. for the Blind, 173 F.3d 1226, 1237 (10th Cir. 1999) (citing DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189, 195-97 (1989)). State actors may generally only be held accountable under the Due Process Clause for their own actions. See id. There are two established exceptions to this general rule: (1) the special relationship doctrine and (2) the danger creation theory. See id. (citing Uhlrig v. Harder, 64 F.3d 567, 572 (10th Cir. 1995)). The parties agree that Plaintiff is basing his claim on the danger creation theory. In order to succeed under the danger creation theory, a plaintiff must demonstrate that (1) the plaintiff was a member of a limited and specifically definable group; (2) the defendant's

-26-

conduct put the plaintiff at substantial risk of serious, immediate, and proximate harm; (3) the risk was obvious and known; (4) defendant acted recklessly in conscious disregard of that risk; (5) that such conduct, when viewed in total, is conscience shocking; and (6) that defendant actors created the danger or increased the plaintiff's vulnerability to the danger in some way. See DeAnzona v. City and County of Denver, 222 F.3d 1229, 1235 (10th Cir. 2000) (citing Armijo v. Wagon Mound Pub. Schs., 159 F.3d 1253, 1262-63 (10th Cir. 1998)). The danger creation theory must ultimately rest on the specifics of a substantive due process claim, i.e., a claim predicated on reckless or intentional injury-causing state action which shocks the conscience. See Armijo, 159 F.3d 1262 (quoting Uhlrig, 64 F.3d at 572). To satisfy the "'shock the conscience'" standard, "'the plaintiff must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking.'" Id. An act is reckless when it reflects a wanton or obdurate disregard or complete indifference to risk. See Sutton, 173 F.3d at 1238 (holding that a failure to enact the policies and procedures does not rise to the level of complete indifference sufficient for danger creation theory); DeAnzona, 222 F.3d at 1236 (holding that the failure of the counselor in not watching the child walk to another counselor and thereby letting the child wander away and drown is terribly tragic, but not conscience shocking).

### i. Defendants Perry and Torrance County

The evidence presented by Plaintiff with regard to Defendants Perry and Torrance County does not meet the requisite standard under the substantive component of the Due

Process Clause. There is no evidence presented that these Defendants' conduct created or increased the danger. Plaintiff has failed to demonstrate intentional or reckless conduct on the part of these defendants. See Sutton, 173 F.3d at 1238. Therefore, summary judgment is granted Defendants Perry and Torrance County on this claim.

### ii.   Defendants CCA, Dorsey, and Rodriguez

There is evidence that these Defendants were aware of the high incidence of inmate assaults at the TCDF, and failed to take any measures to abate it. However, Plaintiff provides no evidence to establish that these Defendants were aware of any particular risk to Joshua McCann. Since Plaintiff did not claim that these Defendants intentionally created a dangerous situation for Joshua McCann, which ultimately led to his injury, Plaintiff's claim must rest on a showing of reckless conduct on the part of Defendants. See id. An act is reckless when it reflects a wanton or obdurate disregard or complete indifference to risk. A reckless intent is established if the state actor was aware of a known or obvious risk that was so great that it was highly probable that serious harm would follow, and he or she proceeded in conscious and unreasonable disregard of the consequences. See id. Plaintiff has failed to demonstrate such degree of recklessness on the part of these Defendants so as to sustain his Fourteenth Amendment claim. The evidence presented does not rise to such a level so as to shock the conscience and constitute a substantive due process violation under the Fourteenth Amendment. The Court therefore grants summary judgment to these Defendants on this issue.

### d.     **Breach of Contract**

Defendants argue that Plaintiff's breach of contract claim against CCA, Torrance County, NMDOC, and Defendant Perry must be dismissed because Plaintiff has no privity of contract, and is not an intended beneficiary with respect to enforcement of rights under the contract. Defendants also argues that Plaintiff failed to demonstrate that the contracts were formulated with the specific intent to benefit the inmates. Finally, Defendants contend that a more stringent test applies to governmental contracts because the potential for liability from members of the general public is high.

New Mexico recognizes a third-party beneficiary's right to enforce the rights under the contract to which he or she is not a party. See Tarin's, Inc. v. Tinley, 2000-NMCA-048 ¶ 12, 129 N.M. 185, 190, 3 P.3d 680, 685. There are two classes of their party beneficiaries: (1) intended beneficiaries and (2) incidental beneficiaries. See id. at ¶ 13, 129 N.M. at 191, 3 P.3d at 686. Only intended beneficiaries can seek enforcement of a contract. See id. The paramount indicator of third-party beneficiary status is a showing that the parties to the contract intended to benefit the third party, either individually or as a member of a class of beneficiaries. See id. Such intent must appear either from the contract itself or from some evidence that the person claiming to be a third-party beneficiary is an intended beneficiary. See Flores v. Baca, 117 N.M. 306, 311, 871 P.2d 962, 967 (1994). The burden is on the person claiming to be a third-party beneficiary to show that the parties to the contract intended to benefit him. See id.

There are a number of contracts that are implicated in this case. Plaintiff relies upon the contract between Lea County and NMDOC which provides a host of protections to the inmates. Defendants rely upon the provisions of the Joint Powers Agreement entered between Torrance County and NMDOC. The Joint Powers Agreement provides that the agreement is for the sole benefit of the parties, and shall not be construed as conferring rights on any other person or identity. Plaintiff disputes that the Joint Powers Agreement is controlling and contend that this contract is not the controlling one. He points to the contract between Lea County and Torrance County instead. It is noted that even this contract between Lea County and Torrance County references the contract between the NMDOC and Lea County, and the contract between NMDOC and Lea County provides that the provisions of the agreement are for the sole benefit of the parties, and shall not be construed as conferring rights upon any other person or entity. (Plf's undisputed facts 71). The burden is on Plaintiff to prove that the parties to the contract intended to benefit him. See Tarin's, Inc., 2000-NMCA-048, 129 N.M. at 191, 3 P.3d at 686. Plaintiff has failed to provide any evidence to discharge his burden. Summary judgment is therefore granted to all Defendants on the breach of contract claim.

e.     **Negligence Claims**

In order to decide whether or to what extent Plaintiff's state-law negligence claims survive Defendant's *Motion for Summary Judgment*, the Court must first determine whether the governmental Defendants are entitled to sovereign immunity with respect to any of these

-30-

claims. Under the New Mexico Tort Claims Act (NMTCA), a governmental entity and any public employee acting within the scope of his or her duty are granted immunity from liability for any tort except as waived. <u>See</u> N.M. Stat. Ann. § 41-4-4(A); <u>see also</u> <u>Wittkowski v. N.M. Corr. Dep't</u>, 103 N.M. 526, 529, 710 P.2d 93 (Ct. App. 1985).

Section 41-4-6 addresses the waiver of premises liability. Section 41-4-6 states in relevant part:

> The immunity granted pursuant to [Section 41-4-4(A)] does not apply to liability for damages resulting from bodily injury, wrongful death or property damage caused by the negligence of public employees while acting within the scope of their duties in the operation or maintenance of any building, public park, machinery, equipment or furnishings.

N.M. Stat. Ann. 41-4-6. In <u>Callaway v. N.M. Dep't of Corr.</u>, 117 N.M. 637, 642-43, 875 P.2d 393, 398-99 (Ct. App. 1994), the New Mexico Court of Appeals held that an inmate stated a claim sufficient to waive immunity under Section 41-4-6 when he alleged the existence of a dangerous condition which posed risk to the prison population at large. In a situation where the danger is unique to a specific inmate, however, such negligence does not create an unsafe condition on the prison premises as to the general population, and, therefore there is no waiver of immunity. <u>See</u> <u>Archibeque v. Moya</u>, 116 N.M. 616, 621 n.3, 866 P.2d 344, 349 n.3 (1993).

In this case, Plaintiff has presented evidence which gives rise to a reasonable inference that there existed a situation at TCDF on September 10, 1998, that was caused by Defendants' negligence and that posed a significant danger to the general population. In

New Mexico, negligence encompasses the concepts of foreseeability of harm to the person injured and a duty of care towards that person. See Bogart v. Hester, 66 N.M. 311, 347 P.2d 327 (1959). An act is negligent if a reasonable person should have known such an act to cause injury to him or to another. See UJI 13-1601 NMRA 2003. In this case, there is difference of opinion between Plaintiff's and Defendants' experts regarding the indirect supervision method employed at TCDF and on the issues of staffing at TCDF. (Ex. J; Aff. Montgomery ¶ 16 v. Ex. 14; Aff. Sullivan ¶ 11). Further, there are a number of disputed facts regarding the issue whether Corrections Officer Henson had performed the safety checks reasonably or not. Therefore, the remaining Defendants are not entitled to summary judgment on grounds of sovereign immunity with respect to this particular theory of negligence involving danger to the general prison population. See Callaway, 117 N.M. at 642-43, 875 P.2d at 398-99.

Plaintiff also contends that the misclassification of the inmates who attacked Joshua McCann on September 10, 1998, played a causal role in the attack. As all classifications involving changes in custody or security designation were to be made by the NMDOC committee, and under the contract TCDF is required to utilize the classification system employed by NMDOC, arguably Perry and NMDOC may have played a causal role in such classifications. Nevertheless, the NMTCA does not provide a waiver of immunity if an injury results from a negligently performed administrative task affecting a single inmate. See id. The alleged misclassification of particular inmates in this case falls into this

category. It follows that Defendants Torrance County, Perry, and NMDOC are entitled to partial summary judgment on this particular negligence theory for the reasons stated in Archibeque, 116 N.M. at 621, 866 P.2d at 349.

Defendants Torrance County, NMDOC, and Perry correctly assert that they are not law enforcement officers and, therefore, the waiver of immunity under 41-4-12 does not apply to them. Nevertheless, immunity with respect to these governmental Defendants may be waived under other sections of the NMTCA. See, e.g., N.M. Stat. Ann. §§ 41-4-4, 41-4-6, 41-4-9, 41-4-10; see generally Silva v. N.M., 106 N.M. 472, 477-78, 745 P.2d 380, 385-86 (1987). Therefore, the fact that the governmental Defendants are not law enforcement officers does not provide grounds for granting summary judgment in their favor on Plaintiff's negligence claims.

Defendants Perry, Dorsey, and Rodriguez also argue that they are entitled to summary judgment because they cannot be held vicariously liable for the negligence of another employee under Silva, 106 N.M. at 478, 745 P.2d at 386. This rule is of limited application, however, because it only applies to public employees. See id. In this case, Defendants Dorsey and Rodriguez are not public employees, and Plaintiff is not relying exclusively on a theory of vicarious liability with respect to this group of Defendants. Therefore, this rule does not provide a basis for granting summary judgment in Defendants' favor with respect to Plaintiff's negligence claim.

Defendants assert no further valid grounds for granting sovereign immunity with respect to Plaintiff's negligence claims.   Absent sovereign immunity, the remaining Defendants are subject to liability for their negligence.  In this case, the Court determines that there are genuine issues of material fact concerning whether Plaintiff was injured as a result of the remaining Defendants' negligence.  Therefore, Defendants' motion for summary judgment is denied with respect to Plaintiff's negligence claims.

### f.      Punitive Damages

As noted above, Plaintiff has conceded that he is not entitled to punitive damages against the governmental Defendants.  Punitive damages are available, however, against individual Defendants if their conduct is shown to motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally- protected rights of others. See Smith v. Wade, 461 U.S. 30, 56 (1983).  In the negligence context, a plaintiff must introduce evidence suggesting "'a culpable mental state'" and conduct rising to a wilful, wanton, malicious, reckless, oppressive, or fraudulent level.  Torres v. El Paso Elec. Co., 1999-NMSC-029 ¶ 27, 127 N.M. 729, 740, 987 P.2d 386, 397.  Because of the disputed facts regarding the conduct of various private actors and their state of mind, summary judgment is denied on this issue.

### 4.      Plaintiff's Summary Judgment Motion on Negligence of CCA

Plaintiff filed a separate summary judgment motion as to his negligence count against CCA.  Plaintiff argues that Defendant CCA is negligent because it breached its own policy

of preventing inmates from entering into one another's cells. Defendants contend that the locking of inmate's cell doors during the day is merely a guideline and not a rule (Aff. Dorsey ¶ ¶ 5-8) and that, therefore, such guidelines do not rise to the level of a duty with respect to the negligence theory. Further, the handbook at issue here states that its purpose is to provide guidelines for inmates to receive orientation upon arrival. (Ex. 1; CCA policy 17-101.01). Defendants proffered evidence by its expert that it is the standard practice of most correctional facilities to allow inmates to enter each other's cells in minimum, medium, or close facilities. (Ex. 3; Aff. Sullivan at ¶ 6). Mr. Sullivan also opined that it is within the standard of care in permitting inmate doors to remain unlocked during the day, and even to permit inmates to visit each other in each other's cells. (Ex. 3; Aff. G. Sullivan at ¶ 7). Plaintiff's expert noted that the classification system employed by TCDF falls below the standard of care, (Ex. J, Aff. Montgomery ¶ 4) and he further noted that the classification system employed does not take into account the dangers of the offenders. (Ex. J, Aff. Montgomery ¶ ¶ 5-9). Genuine issues of material fact exist as to whether CCA breached a duty, and whether that breach contributed to Joshua McCann's injury. Plaintiff's motion for summary judgment on negligence count against CCA is, therefore, denied.

**C.    Defendants' Motion to Bifurcate Trial**

Defendants have moved to bifurcate the liability and damages portions of the trial. Plaintiff opposed the motion. The Court has considered the arguments made by the parties in support of their respective positions. This Court has discretion to grant separate trials

-35-

under Fed. R. Civ. P. 42(b) upon consideration of the need to prevent delay and prejudice and to promote convenience, expedition and economy. The pending case will be tried to the Court as the fact finder. This is a bench trial. Under the circumstances of the present case, the Court cannot find that separate trials as to liability and damages will prevent delay or prejudice, nor can it find that separate trials would be conducive to the convenience or economy of the Court. These factors, therefore, weigh in favor of a single trial. The motion to bifurcate the trial is, therefore, denied.

## III.    CONCLUSION

For the foregoing reasons, the Court: (1) grants Plaintiff leave to file a second amended complaint subject to the limitations stated in this *Memorandum Opinion and Order*, (2) grants in part and denies in part Defendants' second and third motions to dismiss, (3) denies Defendants' motion to bifurcate, (4) grants in part and denies in part Defendants' summary-judgment motion, (5) and denies Plaintiff's summary-judgment motion as to the negligence claim against Defendant CCA. As a result of these rulings, there are no remaining claims against Defendants Torrance County Detention Facility, Torrance County Commissioners, or Torrance County Sheriff's Department, and these Defendants are dismissed from this action with prejudice. With respect to Defendants Torrance County, Robert Perry, and New Mexico Department of Corrections, only certain negligence claims remain pending. Finally, with respect to Defendants Dorsey, Rodriguez, and CCA, the only

claims that remain pending are the negligence claims and the Eighth Amendment failure-to-protect claims.

IT IS, THEREFORE, ORDERED that Plaintiff's *Motion for Leave to File Plaintiff's Second Amended Complaint* [Doc. No. 41] is **GRANTED IN PART** and **DENIED IN PART** under the conditions specified above.

IT IS FURTHER ORDERED that Defendants' *Third Motion To Dismiss (Civil Rights Claims)* [Doc. No. 50] is **GRANTED IN PART** and **DENIED IN PART** under the conditions specified above.

IT IS FURTHER ORDERED that Defendants' *Second Motion to Dismiss (Torrance County Detention Facility and the Torrance County Sheriff's Department and Various Supplemental State Law Claims)* [Doc. No. 55] is **GRANTED IN PART** and **DENIED IN PART** under the conditions specified above.

IT IS FURTHER ORDERED that *Defendants' Motion to Bifurcate Trial* [Doc. No. 87] is **DENIED**.

IT IS FURTHER ORDERED that *Plaintiff's Motion for Summary Judgment as to Negligence Count Against Corrections Corporation of America* [Doc. No. 91] is **DENIED**.

IT IS FURTHER ORDERED that *Defendants' Motion for Summary Judgment* [Doc. No. 96] is **GRANTED IN PART** and **DENIED IN PART** under the conditions specified above.

**IT IS FURTHER ORDERED** that all of Plaintiff's claims against Defendants Torrance County Detention Facility, Torrance County Commissioners, and Torrance County Sheriff's Department are **DISMISSED WITH PREJUDICE.**

**SO ORDERED** this 30th day of September 2003, in Albuquerque, New Mexico.

**M. CHRISTINA ARMIJO**
*United States District Judge*